NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| MERAT M. SABA, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 3:16-cv-4712-BRM-TJB |
| MIDDLESEX COUNTY BOARD OF SOCIAL SERVICES and CWA LOCAL 1082 | : |
| Defendants. | : **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendant Middlesex County Board of Social Services' ("MCBSS") Motion to Dismiss (ECF No. 14-2) and (2) Defendant CWA Local 1082's ("CWA") (together with MCBSS, "Defendants") Motion to Dismiss (ECF No. 16-1). Plaintiff Merat Saba ("Plaintiff") opposes the Motions. (ECF No. 24 and 25.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument.[1] For the reasons set forth below and for good cause shown, Defendants' Motions are **GRANTED**.

I. **BACKGROUND**

For the purposes of these Motions, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court may consider any "document

---

[1] The Court held an in-person status conference on November 28, 2016 (ECF No. 23), and a settlement conference on January 31, 2017 (ECF No. 34).

*integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The Court will not consider allegations raised for the first time in the parties' briefs. *Town of Secaucus v. U.S. Dep't of Transp.*, 889 F. Supp. 779, 791 (D.N.J. 1995).

On August 3, 2016, Plaintiff filed this District's form complaint for employment discrimination ("Form Complaint") (ECF No. 1) to which he attached a two-page supplemental letter ("Supplemental Letter") (ECF 1-1) (collectively, the "Complaint"). Plaintiff provides little, if any, factual allegations in support of his claims in the Form Complaint, but filled it out as follows:

- For Part I(C), entitled "Place of Employment," Plaintiff listed MCBSS, 181 How Lane, New Brunswick, Middlesex, New Jersey 08901

- For Part II, entitled "Basis for Jurisdiction," Plaintiff checked boxes for the following:
    - Title VII of the Civil Rights Act of 1964 ("Titled VII");
    - Age Discrimination in Employment Act of 1967 ("ADEA"); and
    - American with Disabilities Act of 1990 ("ADA")

- For Part III(A), asking for "[t]he discriminatory conduct of which [Plaintiff] complain[s]," Plaintiff checked boxes for the following:
    - Termination of employment
    - Failure to promote
    - Retaliation

- For Part III(D), asking on what basis Defendants discriminated against him, Plaintiff checked boxes for the following and filled in the following information:

- o Race – "Persian"
- o Religion – "Islam"
- o National Origin – "Iran"
- o Age (asking for year of birth) – "02 Nov. 1954"
- o Disability or perceived disability – "Polio"

- For Parts IV(B) and (C) regarding exhaustion of remedies before the Equal Employment Opportunity Commission ("EEOC"), Plaintiff indicated he received the EEOC's Notice of Right to Sue letter on July 18, 2016, and that less than sixty days had elapsed since that time.
- For Part V regarding "Relief," Plaintiff indicated only that he seeks "financial as well as psychological" relief.

(*See generally*, ECF No. 1.) All other parts of the Form Complaint were left blank (save personal and docketing information) and provide no indication of an accompanying letter, although the form allows plaintiffs to "[a]ttach additional pages if needed."[2] (ECF No. 1 at 5.)

According to the Supplemental Letter, which attempts to provide more detailed factual allegations, Plaintiff began working for the MCBSS on January 2, 2001. (ECF No. 1-1 at 1.) He was allegedly denied several promotions "even though [he] took the tests" and contends his "employment termination was pre arranged [sic] and a set up." (*Id.* at 2.)

In support of these claims, he professes to have worked hard to serve his clients but was told by an unnamed supervisor to only take one case per day. (*Id.* at 1.) Based on Plaintiff's "understanding and experience," "[his] kind of service oriented behaviors [were] prohibited and

---

[2] MCBSS contends, as a basis for dismissal, *inter alia*, it was never served with the Supplemental Letter. (ECF No. 14-2 at 1.)

[were] against the tradition of a union work force." (*Id.* at 2.) Plaintiff further alleges the "agency always assigned supervisors and assistance [sic] supervisors in [his] unit that they [sic] were unfamiliar with program [sic] despite a few times of verbal communication to the department administrator." (*Id.*).

In lieu of an answer, Defendants filed these Motions to Dismiss. MCBSS alleges: (1) Plaintiff failed to serve MCBSS with the Supplemental Letter and therefore the Court lacks jurisdiction over MCBSS; (2) Plaintiff failed to exhaust his administrative remedies with respect to a discrimination claim based on race; and (3) Plaintiff's claims fail to state a claim upon which relief may be granted. (ECF No. 14-2.) CWA alleges Plaintiff failed to exhaust administrative remedies, arguing they were not named in the EEOC claim, and that Plaintiff's Complaint fails to state a cause of action. (ECF No. 16-1.) In support, Defendants provide the Court with documents from the EEOC claim. (*See, e.g.*, Plaintiff's Charge of Discrimination filed with EEOC, Ex. A to Grzeskowiak Certif. (ECF No. 14-5) at 2.)

On November 15, 2016, Plaintiff filed a letter with the Clerk's office which appears to be a letter from the MCBSS to Plaintiff, dated November 15, 2016, with the subject line "Cancellation of Retirement." (ECF No. 15.) No cover or explanatory letter from Plaintiff was attached. The letter states, in pertinent part:

> We have been advised by the Division of Pensions that you have cancelled your application for retirement, which was to become effective as of December 1, 2016.
>
> I would like to remind you that the submission of your papers for retirement was part of the Settlement Agreement which you voluntarily executed on November 10, 2015. I wish to point out the consequences of the cancellation of your retirement.
>
> Obviously, by withdrawing your application, you will not be receiving a pension, which we have estimated to be approximately $1,500 per month. Additionally, you will not be eligible for paid

4

> lifetime health benefits. Finally, pursuant to Paragraph 7 of the Settlement Agreement, the Board will "immediately reinstate the termination for cause of your employment with the Board". [sic]
>
> I would also like to point out that nothing contained in the Settlement Agreement would preclude your seeking employment after the effective date of your retirement. As your retirement was to commence as of December 1, 2016, you have until the end of November to rectify this situation.

(*Id.*)

At the in-person status conference on November 28, 2016, the Court, having only received Plaintiff's November 15 submission and having not received any opposition to Defendants' Motions, ordered Plaintiff to file responsive papers by December 9, 2016. Plaintiff filed his opposition on December 7, 2016 (ECF No. 25), to which Defendants replied (ECF Nos. 26 and 27).

Plaintiff's opposition goes well beyond the Complaint.[3] Although the Court may not consider such allegations on a motion to dismiss, the Court includes them here for inclusion in the record and to assure Plaintiff the Court has reviewed his submissions.

With respect to CWA, Plaintiff contends, for the first time, he is suing the CWA for "legal extortion" – a "criminal act" which he describes as CWA's "failure to provide service and representation" and "fail[ure] to protect its members while collecting dues regularly." (ECF No. 25 at 2.) Specifically, he notes CWA "failed to represent [him] properly at a hearing on 08 Oct. 2015 when [his] employment was in question." (*Id.* at 1.) Regarding Plaintiff's failure to include CWA in his EEOC claim, Plaintiff contends Defendants are located in the same building, he

---

[3] Plaintiff continues to maintain he is entitled to *pro bono* counsel, his first motion for which (ECF No. 2) was denied (ECF No. 11). If Plaintiff wishes to file a new motion for the appointment of *pro bono* counsel, he is entitled do so.

"mentioned to the [EEOC] investigator about the practice of [Defendants]," and "[i]f the EEOC has made any error, it would be to blame because of [P]laintiff attorney's absence." (*Id.* at 3.)

He also alleges, for the first time, various coworkers,[4] with less experience than he, were promoted and/or held supervisory positions, requiring him to report to them; "[i]t was bad management, intimidation, unjust treatment in work environment." (*Id.* at 2.) He contends, "My job termination was due to failure of management to conduct proper administrative and justifiable tasks, by allowing an untrained individual with character problem to monitor more experience and knowledgeable worker." (*Id.* at 3.)

The only reference to discrimination involves a coworker's alleged biases regarding African American clients. (*Id.*) Plaintiff does not reference any discrimination toward him. Plaintiff contends he and coworker "M. Fitzgerald," a Training Technician, had several verbal disagreements, several of which escalated to "threatening statements," over Fitzgerald's review of and determination regarding the client's policy. (*Id.* at 3-4.) According to Plaintiff's Opposition:

> Plaintiff noticed that Fitzgerald would stay away from Afro-Americans and hardly speaking [sic] to them of course I may very well be wrong . . . . However, when I observed that case and compare with other similar cases where clients were from other social divisions to me was indication and sign of preferential treatment of one group in reference to other.

(*Id.* at 4.) Plaintiff goes on to contend the altercations with Fitzgerald were brought to "personnel" the next day and he was placed on paid leave. He also mentions the police were called because he initially refused to leave the building. After a one-month "suspension" period, he was terminated. (*Id.*)

---

[4] Plaintiff refers to these coworkers by "[a]lphabetical identifications" – i.e., "A," "B," "C," etc. – "to secure individuals [sic] name from public record." Plaintiff states he would "provide[] actual names if court [sic] gives written approval statement and that plaintiff would be clear of all liabilities." (ECF No. 25 at 2.)

6

Plaintiff also alleges, at some point, he "sign[ed] an agreement" and was

> instructed by the agency to go to disability for approximately six months while receiving salary from agency, then go to state disability for six months and then retire. Plaintiff [sic] state disability stopped in Oct 2016, when applied [sic] for unemployment and after a Telephone interview on 25 Nov. 2016, a computer generated letter mailed to plaintiff with an appointment on 03 Jan. 2017 for another Telephone interview because employer has reported cause of separation "Misconduct" an allegation that disqualify plaintiff to receive unemployment.

(*Id.* at 4-5.) Plaintiff concludes his Opposition by stating:

> Plaintiff sues [MCBSS for] $4,200,000.00 because of unjustifiable actions taken place against plaintiff and wrongful termination that explained [sic] in this respond to defendants.
>
> Information and statements of this response must be investigated because plaintiff judges himself as right and just. Plaintiff must be functional and working due to Polio, any stress or psychological pressure may cause activation of virus that would lead to paralysis of plaintiff.

(*Id.* at 5.)

After the Motions were fully briefed, Plaintiff filed another submission with the Clerk's office. (ECF No. 28.) The document purports to be a Notice of Determination from the New Jersey Department of Labor and Workforce Development Unemployment and Disability Insurance Services regarding a claim filed by Plaintiff on October 16, 2016. The Notice states, in pertinent part:

> YOU ARE HEREBY NOTIFIED THAT BASED UPON THE FACTS OBTAINED AND IN ACCORDANCE WITH NEW THE JERSEY UNEMPLOYMENT COMPENSATION LAW, THE DEPUTY (NAMED BELOW) HAS DETERMINED THAT:
>
> YOU ARE ELIGIBLE FOR BENEFITS FROM 10/18/16.
>
> YOU WERE DISCHARGED FOR THE ALLEGED VIOLATION OF A COMPANY RULE. SINCE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THIS ALLEGATION, YOUR

> ACTIONS DO NOT CONSTITUTE A WILLFUL AND DELIBERATE DISREGARD OF THE STANDARDS OF BEHAVIOR YOUR EMPLOYER HAD A RIGHT TO EXPECT. THEREFORE, YOUR DISCHARGE WAS NOT FOR SIMPLE MISCONDUCT CONNECTED WITH THE WORK. YOU ARE ELIGIBLE FOR BENEFITS.

(*Id.*)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

8

required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

This Court's review is limited to the Complaint, which the Court accepts as true, as well as any "document *integral to or explicitly relied upon* in the complaint." *See Phillips*, 515 F.3d at 228; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citation omitted). Accordingly, the Court considers Plaintiff's Charge of Discrimination filed with EEOC (ECF No. 14-5 at 2) to ensure the procedural predicates for the claims – i.e., the exhaustion of administrative remedies – have been met. The Court does not review the EEOC charge for substance. *See Smith v. Delaware River Stevedores*, No. Civ. A. 07-1864, 2008 WL 4890135, at *1 n.1 (E.D. Pa. Nov. 10, 2008) ("In evaluating whether a plaintiff has exhausted her administrative remedies, however, courts routinely consider the plaintiff's administrative filings as public records."); *Lightcap-Steele v. KidsPeace Hosp., Inc.*, No. Civ. A. 05-02578, 2006 WL 1147476, at *5 (E.D. Pa. Apr. 27, 2006). The Court will not consider allegations raised for the first time in the parties' briefs. *Secaucus*, 889 F. Supp. at 791.

In sum and substance, Plaintiff's Complaint alleges he was not promoted and eventually terminated because he worked too hard and was smarter and more experienced than his superiors.

These allegations do not state a cause of action for discrimination. The only allegations of employment discrimination are in the Form Complaint, where he checked boxes which, when read together, allege Defendants discriminated against Plaintiff on the basis of race (Persian), religion (Islam), national origin (Iran), age (62), and disability (Polio) in violation of Title VII, the ADEA, and the ADA when they terminated his employment, failed to promote him, and retaliated against him. (ECF No. 1.) Plaintiff does not provide any factual allegations, either in the Form Complaint or Supplemental Letter, to support these claims. To the contrary, Plaintiff's Complaint alleges his termination was "pre arranged [sic] and a set up" after several less-qualified coworkers were promoted. (ECF No. 1-1.)

Plaintiff's Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief [under Title VII, the ADEA, or the ADA] that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan*, 478 U.S. at 286, and therefore does not accept as true, without more, Plaintiff's legal conclusion that Defendants are in violation of Title VII, the ADEA, or the ADA.

Additionally, Plaintiff concedes he did not file a claim against CWA with the EEOC. (ECF No. 25 at 5.) Indeed, a review of Plaintiff's EEOC charge reveals CWA was not named as a party, nor did Plaintiff allege race as a basis from discrimination. (ECF No. 14-5 at 2.) Because Plaintiff may only bring a Title VII, ADEA, or ADA action against a defendant who was previously named in an EEOC charge, the claims against CWA are improper. *See* 29 U.S.C. § 626(d)(1) (ADEA); *Churchill v. Star Enters.*, 183 F.3d 184 (3d Cir. 1999) (ADA); *Schafer v. Bd. of Pub. Ed.*, 903 F.2d 243, 251 (3d Cir. 1990) (Title VII). Similarly, Plaintiff may not bring a claim against MCBSS for race because Plaintiff's suit is "limited to claims that are within the scope of the initial

administrative charge" and is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Barzaty v. Verizon Pa., Inc.*, 361 Fed. App'x 411, 413-14 (3d Cir. 2010). Plaintiff could have checked the "race" box in his EEOC charge and elected not to. Accordingly, he is precluded from bring a Title VII claim here on the basis of race.

Therefore, MCBSS's Motion to Dismiss is **GRANTED WITH PREJUDICE** for failure to exhaust administrative remedies as to Plaintiff's Title VII claim on the basis of race and **GRANTED WITHOUT PREJUDICE** for failure to state a claim[5] as to Plaintiff's remaining Title VII claims and Plaintiff's ADEA and ADA claims. CWA's Motion to Dismiss is **GRANTED WITH PREJUDICE** for failure to exhaust administrative remedies.

**IV.  CONCLUSION**

For the reasons and as set forth above, the Court **GRANTS** Defendants' Motions to Dismiss. An appropriate order will follow.

**Date: June 30, 2017**                    */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[5] The Court declines to grant MCBSS's motion on the basis of improper service.